IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

IN RE SHANNON OWENS,

              Bankruptcy Case Number
              18-82336-CRJ-13

 Debtor,

SHANNON OWENS,

 Plaintiff,

              Adversary Proceeding No.

v.

PATRIOTS ACCEPTANCE D/B/A RIMFINANCING.COM
PATRIOT'S CUSTOM WHEELS
ACCUCREDIT ASSOCIATES, LLC

 Defendants,

**COMPLAINT**

  The debtor in this bankruptcy case and plaintiff in this adversary proceeding, Shannon Owens ("Owens"), makes the following allegations in his complaint against the defendants, Patriots Acceptance d/b/a RimFinancing.com ("Patriots"), Patriot's Custom Wheels ("Patriot's Custom"), and Accucredit Associates, LLC ("Accucredit").

**Parties, Jurisdiction, and Nature of Action**

  1. Owens is the debtor in the above-referenced Chapter 13 bankruptcy case which was commenced on August 6, 2018. Patriots is a corporation organized and existing under the laws of the State of Virginia. Patriots Custom is a corporation organized and existing under the laws of the State of Virginia. Accucredit is a corporation organized and existing under the laws of the State of New Jersey. At all times material to this complaint, Patriots regularly and systematically conducted business in the State of Alabama, and, in particular, within that portion of the State of Alabama lying within this court's district and division. Owens did business with the defendants within this district and division, and it is these business transactions that give rise to this litigation.

  2. Owens chapter 13 bankruptcy commenced on August 6, 2018.

  3. Patriots is listed as a creditor in the schedules filed by Owens.

  4. Despite having both notice and actual knowledge of the commencement of Owens's case, the defendants sent a collection letter, made numerous phone calls, sent text messages, and posted on Owens Facebook page in an effort to collect a pre-petition debt owed by Owens to the

1

defendants. As if filing for bankruptcy was not emotionally challenging enough, the defendants chose to use social media to violate the Automatic Stay. Here, the creditor receiving notice of the bankruptcy appears to have prompted the threatening and offensive actions against the debtor. The defendants violated the stay **multiple times** despite having both actual and constructive notice of the bankruptcy filing. In fact, representatives from Patriots, self-identified as "Mechelle" and "Jeanette Jones," told the debtor they didn't care that he had filed bankruptcy – told him "that doesn't matter." The defendant then elected to enter the "age of social media" by posting their phone number on the debtor's Facebook page in an attempt to collect. These defendants cast their net wide in a concerted and targeted effort to collect, post-petition, from this debtor. Letters, phone calls, text messages, and social media were all employed to exert **maximum pressure** on the debtor. The debtor was, in particular, humiliated by the very "public" posts to his Facebook page. This use of social media coupled with the more conventional letters, text messages, and phone calls leaves little doubt as to the defendants' nefarious intention. Clearly, based on the breadth and multifaceted approach to violating the stay, the defendants have non-existent or grossly inadequate systems and procedures in place to prevent stay violations from occurring. The defendants have violated the automatic stay. The debtor in this case asks this court to take note that "social media" can be a powerful mechanism to badger someone. The defendants have deliberately and intentionally used social media as a dangerous weapon in their attempt to collect a pre-petition debt. The debtor argues that "Facebook" is used because it adds extra shock value. The more shocking, the more harassing, the more outrageous, the more the debt collector gets paid. What makes this "modern" method of debt collection so dangerous is that the creditor can contact somebody's family and friends very quickly and very easily, setting off a domino effect of panic that is devastating to a struggling debtor. The Eleventh Circuit has held that emotional distress damages were included within the broad term of "actual damages," provided by Section 362(K). See *Lodge v. Kondaur Capital Corp.*, 750 F.3d 1263 (United States Court of Appeals, 11th Circuit). The type of collection abuse chronicled in this Adversary Proceeding likely passes the test set forth in *Lodge*. Specifically, Owens has suffered significant emotional distress. The emotional distress can be established and a causal connection can be demonstrated between the emotional distress and the violation of the automatic stay.

5. Owens brings this action to recover the actual damages he has sustained as a result of the defendants' willful violation of the automatic stay in this case and to recover punitive damages from the defendants for those violations.

6. This adversary proceeding arises in a case under Title 11 of the United States Code, and it is a core proceeding since it concerns the administration of Owens's estate, requests the return

2

Case 18-80084-CRJ    Doc 1    Filed 08/29/18    Entered 08/29/18 16:55:38    Desc Main
Document      Page 2 of 4

of property of the estate, and affects the adjustment of the debtor-creditor relationship between Owens and the defendants. Consequently, this is a core proceeding, and this court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §157(b)(2)(A), (E), and (O), and 28 U.S.C. §1334(b).

### Claim – Violation of the Automatic Stay

7. Owens incorporates by reference the allegations in paragraphs one through three of this complaint.

8. Owens specifically alleges an agency relationship exists between RimFinancing.com, Patriots Acceptance, Patriot's Custom Wheels, and Accucredit Associates.

9. The schedules filed by Owens upon the commencement of this bankruptcy case listed Patriots as a creditor.

10. As a result of Patriots being listed as a creditor in Owens's schedules, Patriots had both notice and actual knowledge of both the commencement of and all the proceedings in Owens's bankruptcy case.

11. Pursuant to §362(a) of the Bankruptcy Code, the commencement of Owens's bankruptcy case gave rise to the automatic stay which, among other things, prohibits Patriots from attempting to collect from Owens any pre-petition obligation owed by Owens to Patriots.

12. Despite the imposition of the automatic stay by the commencement of this case and despite having both notice and actual knowledge of the commencement of this case, Patriots made, or caused to be made, **numerous** phone calls and sent text messages to Owens, sent a collection letter, and posted a collection phone number on his Facebook page, all in stark contravention of the automatic stay. During the first phone call by Patriots to Owens, **he gave notice of his bankruptcy filing** and was told by the representative that "they did not care." The defendants then called, texted, sent a collection letter, and posted on Owens Facebook page in a concerted, intentional, and targeted effort to collect a debt in violation of the automatic stay.

13. The actions of the defendants violate 11 U.S.C. §362 as set forth in this complaint.

14. Owens has sustained and continues to sustain injury and damage as a result of the defendants' violation(s) of the automatic stay.

15. The actions of the defendants evince contempt and distain for this court, the orders it issues, and the protection afforded by Title 11 of the United States Code.

16. Under 11 U.S.C. §362(k)(1), Owens is entitled to an award of compensatory damages, including costs and attorney's fees, and punitive damages against the defendants for their willful, intentional, and **repeated** violation(s) of the automatic stay. Debtor's counsel contends that

the quantum of contacts by this creditor leaves no doubt as to the creditor's culpability regarding "intentionality" and "willfulness" under the statute. The sheer number of contacts and use of social media in contacting Owens highlights this creditor's callous disregard of the Bankruptcy Laws and the rights of others. The gravity, intensity, and novelty of the defendants' behavior warrants an award of punitive damages and sanctions.

17. Owens was emotionally distressed as a direct and proximate result of the defendants' behavior. This use of new and modern collection methods utilized by the defendants is noteworthy, and on the increase, as we have entered the golden age of social media.

**WHEREFORE**, Owens asks this court to enter an order:

(A) Awarding Owens compensatory damages against the defendants including the reasonable attorney's fees and costs incurred by Owens in the preparation and prosecution of this adversary proceeding;

(B) Awarding Owens punitive damages against the defendants for their willful, repeated, and intentional violation(s) of the automatic stay, such damages being intended to instill in the defendants and other creditors due respect for this court and its orders and to deter them from taking similar action against Owens and similarly situated debtors in the future;

(C) Granting Owens any additional or different relief this court deems appropriate; and,

(D) Voiding the debt owed to the defendants in its entirety.

Dated: 08/29/2018　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　　/s/ John C. Larsen_____
　　　　　　　　　　　　　　　　　　　　　　John C. Larsen
　　　　　　　　　　　　　　　　　　　　　　Attorney for the debtor/plaintiff,

OF COUNSEL:
LARSEN LAW P.C.
1733 Winchester Road
Huntsville, Alabama 35811
(256) 859-3008
john@jlarsenlaw.com